**No. 21-55397**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

U.S. WHOLESALE OUTLET & DISTRIBUTION, INC.; TREPCO
IMPORTS AND DISTRIBUTION, LTD.; L.A. INTERNATIONAL
CORPORATION; CALIFORNIA WHOLESALE; YNY
INTERNATIONAL, INC.; EASHOU, INC., DBA San Diego Cash
and Carry; SANOOR, INC., DBA L.A. Top Distributor,

*Plaintiffs-Appellants*,

v.

INNOVATION VENTURES, LLC; LIVING ESSENTIALS, LLC

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:18-cv-01077-CBM-E
Hon. Consuelo B. Marshall

_____

**WHOLESALERS' RESPONSE TO LIVING ESSENTIALS' PETITION
FOR PANEL REHEARING OR REHEARING EN BANC**

_____

Eric F. Citron
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Ave., Suite 850
Bethesda, MD 20814
202.362.0636 (tel)
866.574.2033 (fax)

Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
415.766.7451 (tel)
415.737.0642 (fax)

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................ ii

INTRODUCTION ............................................................................. 1

ARGUMENT.................................................................................. 3

I.    THE OPINION CORRECTLY HOLDS THAT WHOLESALERS ARE IN
COMPETITION WITH COSTCO BUSINESS CENTERS FOR SALES OF
5-HOUR ENERGY ...................................................................... 3

    A.    *Volvo* Expressly Distinguished the Market It Reviewed From the
"Chainstore Paradigm." ...................................................... 4

    B.    The Supreme Court Has Already Held that Wholesalers in the Same
Market Are in Competition for Purposes of the RPA, Despite Not
Selling to "the Same Retailers." ........................................... 7

    C.    The Evidence of Direct Competition is Overwhelming. ..................... 9

    D.    The District Court Used an Inarguably Wrong Rule to Evaluate
Competition. ...................................................................11

    E.    The Non-RPA Cases Living Essentials Cites Are Irrelevant. ............12

II.    THE ARGUMENT THAT A DISFAVORED PURCHASER MUST
PROVE "ANTITRUST INJURY" TO OBTAIN AN INJUNCTION IS
SQUARELY BARRED BY THE CLAYTON ACT AND SUPREME
COURT PRECEDENT. ...............................................................13

III.    LIVING ESSENTIALS' SECONDARY ARGUMENTS ARE LIKEWISE
MISLAID. ...........................................................................17

CONCLUSION ...............................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ag-Chem Equip. Co., v. Hahn, Inc.*,
  350 F. Supp. 1044 (D. Minn. 1972) ................................................................7

*Agostini v. Felton*,
  521 U.S. 203 (1997)....................................................................................8, 9

*Automatic Canteen Co. v. FTC*,
  346 U.S. 61 (1953)..........................................................................................16

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016)........................................................................................2, 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)....................................................................................14, 15

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986)..........................................................................................3

*Chroma Lighting v. GTE Products Corp.*,
  111 F.3d 653 (9th Cir. 1997)..........................................................................16

*Close v. Sotheby's, Inc.*,
  894 F.3d 1061 (9th Cir. 2018)..........................................................................6

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018).....................................................................................17

*Falls City Industries, Inc. v. Vanco Beverage, Inc.*,
  460 U.S. 428 (1983).................................................................................*passim*

*Feesers, Inc. v. Michael Foods, Inc.*,
  591 F.3d 191 (3d Cir. 2010)..........................................................................6

*FTC v. Morton Salt Co.*,
  334 U.S. 37 (1948)...................................................................................15, 16

*FTC v. Simplicity Pattern Company*,
    360 U.S. 55 (1959) ....................................................................*passim*

*FTC v. Sun Oil Co.*,
    371 U.S. 505 (1963) ...............................................................17

*Hasbrouck v. Texaco*,
    842 F.2d 1034 (9th Cir. 1987) ...............................................12

*Hohn v. United States*,
    524 U.S. 236 (1998) .................................................................8

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) ...................................................8

*M.C. Mfg. Co. v. Texas Foundries, Inc.*,
    517 F.2d 1059 (5th Cir. 1975) .................................................7

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) (en banc) ...................................6

*Texas Gulf Sulphur Co. v. J.R. Simplot Co.*,
    418 F.2d 793 (9th Cir. 1969) ...............................................4, 6

*Tri-Valley Packing Ass'n v. FTC*,
    329 F.2d 694 (9th Cir. 1964) ............................................3, 4, 6

*Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006) ..............................................................*passim*

**Statutes**

15 U.S.C. § 26 ............................................................................14, 15

**INTRODUCTION**

Living Essentials seeks rehearing on two grounds: (1) that the panel erred in failing to apply *Volvo*'s "same customer" standard as the test for competition between Wholesalers and Costco; and (2) that the panel erred in failing to require "harm to competition" as a prerequisite for an injunction under section 2(d). Petition 11, 15. Both of these arguments are foreclosed by Supreme Court and Circuit precedent.

As to the first, *Volvo* involved an unusual "customer-specific competitive bidding process," in which "there is no discrete 'favored' dealer comparable to a chainstore." *Volvo Trucks North America, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 170, 178 (2006). The Supreme Court expressly distinguished that type of marketplace from "the chainstore paradigm," which involves competition that is different in "character." *Id.* at 170, 178. The panel's majority opinion recognizes that, unlike *Volvo*, this case "is a typical chainstore-paradigm case," and pointed out that *Volvo* specifically carved out such cases from the rule it applied to customer-specific bidding markets. Op. 33. The majority therefore applied existing Circuit precedent to hold that Wholesalers compete with Costco in selling 5-hour Energy because they all sell at the same functional level into the same geographic market. *Id.* Living Essentials' petition and Judge Miller's dissent do

not even mention *Volvo*'s carveout for the "chainstore paradigm," nor dispute that this is such a case.

More importantly, the argument that a favored and disfavored wholesaler must compete for "*the same customer*," Petition 9, to establish competition under the RPA is foreclosed by Supreme Court precedent directly on point. In *Falls City Industries, Inc. v. Vanco Beverage, Inc.*, the Supreme Court specifically held that wholesalers who do "not compete for sales to the same retailers" are nevertheless in competition for RPA purposes so long as their respective *retailer customers* turn around and sell the product into "a single, interstate retail market." 460 U.S. 428, 432, 436 (1983). This is because the concept of "competition" under the RPA "also encompasses the injury to competition between [wholesalers'] customers." *Id.* at 436. It is well-established that Courts of Appeal cannot hold that one Supreme Court opinion "implicitly" overruled another, *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016), so *Volvo* cannot be deemed to have supplanted that rule from *Falls City*.

Supreme Court precedent also forecloses Living Essentials' second ground for rehearing. As the majority opinion correctly observes, the Supreme Court held in *FTC v. Simplicity Pattern Company* that a plaintiff "need not establish an 'injurious or destructive effect on competition'" to obtain injunctive relief under section 2(d). Op. 9 (quoting 360 U.S. 55, 65 (1959)). Living Essentials' only

2

argument for avoiding *Simplicity Pattern* is to assert that it applies only to FTC proceedings, not to private actions. Petition 16. But no court has recognized such a distinction in the RPA, and in all events the Clayton Act itself does not require actual competitive harm to obtain private injunctive relief. Rather, "in order to seek injunctive relief under § 16, a private plaintiff must allege *threatened* loss or damage." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (emphasis added). Even were actual injury required though, Wholesalers *have* been injured, and will continue to be injured in the future without an injunction: Living Essentials has discriminated against them by withholding (in proportion to Costco) *hundreds of thousands of dollars* in promotional payments that section 2(d) required it to pay them.

## ARGUMENT

### I.   THE OPINION CORRECTLY HOLDS THAT WHOLESALERS ARE IN COMPETITION WITH COSTCO BUSINESS CENTERS FOR SALES OF 5-HOUR ENERGY.

Two published Circuit precedents compel the conclusion that Wholesalers and Costco are in competition for RPA purposes, given that they sell at the same functional level (*i.e.*, wholesalers selling to retailers) in the same geographical area. The first was *Tri-Valley Packing Ass'n v. FTC*, which holds that two customers are in competition where they have outlets in "'geographical proximity'" to each other, purchased the same goods over the same period, and operate "'on a particular

3

functional level such as wholesaling or retailing.'" Op. 22-23 (quoting 329 F.2d 694, 708 (9th Cir. 1964)). Where those factors are present, "'[a]ctual competition in the sale of the seller's goods may then be inferred.'" Op. 23 (quoting *id.*). Living Essentials quibbles with what *Tri-Valley* meant by the phrase "may then be inferred," *see* Petition 13, but overlooks the fact that five years after *Tri-Valley* this Court stated the same rule more plainly: "customers who are in functional competition in the same geographical area, and who buy the seller's products of like grade and quality within approximately the same period of time, *are* in actual competition with each other." *Texas Gulf Sulphur Co. v. J.R. Simplot Co.*, 418 F.2d 793, 807 (9th Cir. 1969) (emphasis added).

That Circuit precedent notwithstanding, Living Essentials seeks rehearing because "[t]he panel decision departs from precedent" by not requiring that the "favored and disfavored purchasers are 'competing' for the same customers." Petition 11. This is incorrect. The "precedent" Living Essentials cites (*Volvo*) is distinguishable on its face, and Living Essentials' insistence on a "same customers" test is squarely contradicted by *Falls City*.

### A. *Volvo* Expressly Distinguished the Market It Reviewed From the "Chainstore Paradigm."

In *Volvo*, the Supreme Court took pains to note that the marketplace it was analyzing bore "little resemblance to large independent department stores or chain operations," in particular because (unlike here) "there is no discrete 'favored'

4

dealer comparable to a chainstore or a large independent department store." 546 U.S. at 178, 181. Rather, *Volvo* concerned a very unusual marketplace for custom-built heavy trucks, in which the truck dealers placed "bids" in response to a truck buyer's customized purchase specifications, and only after the buyer had selected the dealer it intended to buy from was the transaction between the defendant (Volvo) and the purchaser (the dealer whose bid the buyer had accepted) consummated. *Id.* at 170-72. The Court's description of that peculiar marketplace spanned six paragraphs, and the Court noted that the dispute involved only *two* transactions where the plaintiff had actually bid against another dealer of Volvo trucks. *Id.* Given the small pool of transactions, and that the plaintiff did not "even attempt to show that the compared dealers were consistently favored vis-à-vis [itself]," the Court was concerned about the "mix-and-match, manipulable quality" of the claimed competition, while recognizing that "[n]o similar risk of manipulation occurs in cases kin to the chainstore paradigm." *Id.* at 178.

Despite their claim that *Volvo* controls this case too, neither Judge Miller, nor the Petition, even *mentions* the contrast the Court drew to the chainstore paradigm, nor do they explain why that caveat should be disregarded in paradigmatic chainstore cases like this. Presumably the Supreme Court acted intentionally when it twice distinguished the chainstore paradigm from the facts of *Volvo*.

In any event, the panel was required to follow *Tri-Valley* and *Texas Gulf Sulphur* unless it deemed *Volvo* "clearly irreconcilable" with those precedents. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). In other words, "[s]o long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (citations omitted). *Volvo* is easily reconciled, merely by recognizing the unusual structure of the marketplace under review, and by attributing purposefulness to the Court's explicit carve-out for cases in the chainstore paradigm that "[t]he Act centrally addresses." 546 U.S. at 169. Here, the panel was faithful to Circuit precedent, and would have violated it had it created the new rule Living Essentials proposes.

Judge Miller and Living Essentials also cite three out-of-circuit cases to suggest that the "same customer" principle from *Volvo* has a long lineage and is generally applicable to RPA cases. Petition 12; Op. 42-43. But even if it were necessary to consider out-of-Circuit caselaw in deciding whether or not to follow Circuit precedent, all three of those cases apply to unique and very shallow markets just like *Volvo*. *See Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 197-98 (3d Cir. 2010) (noting that "the competing purchaser requirement will vary based on the nature of the market," and finding no competition between "parties competing *in a bid market*" (like *Volvo*) where "the competition between the

favored and disfavored purchaser occurs before the purchase of the goods from the seller") (emphasis added); *M.C. Mfg. Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1068 n.20 (5th Cir. 1975) (evaluating competition between bidders for government contracts and holding that "[t]he very nature of these mutually exclusive commitments in the respective contracts meant that Universal and H/R could not have been 'in competition' with respect to their separate purchases"); *Ag-Chem Equip. Co., v. Hahn, Inc.*, 350 F. Supp. 1044, 1051 (D. Minn. 1972) (involving purchases of commercial agriculture sprayers, where the putative favored purchaser "sold to customers which were completely unavailable to plaintiff," and "never received a penny from a customer to which [plaintiff] could have sold"). Suffice it to say, citing *additional* cases that are similar to *Volvo*'s fact pattern does not cogently explain why *Volvo* applies to the "chainstore paradigm" that it explicitly distinguished.

### B. The Supreme Court Has Already Held that Wholesalers in the Same Market Are in Competition for Purposes of the RPA, Despite Not Selling to "the Same Retailers."

As previewed in the *Introduction*, the Supreme Court has expressly rejected Judge Miller's and Living Essentials' assertion that competition can only be established by proof that "'Costco sold to the *same* retailers as the Wholesalers.'" Petition 9 (quoting Op. 43). *Falls City* concerned price discrimination between a disfavored beer wholesaler in Evansville, Indiana, and a favored wholesaler

7

"[d]irectly across the state line" in Henderson, Kentucky. 460 U.S. at 431. As the Court observed, "[t]he two distributors did not compete for sales to the same retailers," because "Indiana wholesalers were prohibited by state law from selling to out-of-state retailers." *Id.* at 432. But while acknowledging that the two "did not compete with each other at the wholesale level," the Court nevertheless found them to be in competition for RPA purposes because the Act "also encompasses the injury to competition between their customers—in this case the competition between Kentucky retailers and Indiana retailers who … were selling in a single, interstate retail market." *Id.* at 436. Neither Judge Miller nor Living Essentials disputes the fact that Wholesalers and Costco sold, and continue to sell, 5-hour Energy to retailers within identical (here, *intra*state) retail markets.

*Volvo* nowhere suggests any disagreement with this rule from *Falls City*. In fact it repeatedly cites *Falls City* as good law. *See, e.g.*, 546 U.S. at 177. And even if one suspects that *Volvo* undermined *Falls City*—despite explicitly carving out the chainstore paradigm—both the Supreme Court and this Circuit have repeatedly recognized that it is not within the power of a Court of Appeals to conclude that one Supreme Court opinion has "implicitly" overruled another. *Bosse*, 580 U.S. at 3; *Hohn v. United States*, 524 U.S. 236, 252-53 (1998); *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Kashem v. Barr*, 941 F.3d 358, 376 (9th Cir. 2019). Here, *Falls City* has "direct application" to the issue of competition

8

between wholesalers of consumer goods operating within the same retail market, so it is binding. *Agostini*, 521 U.S. at 237.

Wholesalers did not cite this aspect of *Falls City* in their principal appellate briefing only because *Tri-Valley* and *Texas Gulf Sulphur* conclusively establish this Circuit's standard for RPA competition, and Wholesalers' central challenge concerned erroneous jury instructions, not competition. Wholesalers nevertheless repeatedly argued this point from *Falls City* to the district court. *See* Dist. Ct. Dkt. Nos. 172-1 at 21-22; 199-4 at 14; 301 at 12. That court did not address Wholesalers' argument, however, because it followed (at Living Essentials' behest) a legal rule for proving "competition" that not even Living Essentials now defends. *See* Part I.D., *infra*.

## C. The Evidence of Direct Competition is Overwhelming.

Even if the "same retailer" argument weren't foreclosed by *Falls City*, there is overwhelming evidence that Wholesalers and Costco did, in fact, sell 5-hour Energy to the same retailers. That evidence comes from marketplace participants on both sides of the "v.," from every retailer who testified at trial, and was even admitted by one of Living Essentials' two experts:

- Living Essentials' broker reported that Wholesalers "directly compete with Costco Business Centers and have seen sales plummet as Costco runs 5-hour at [the discriminatory pricing]." 3-ER-567.

9

- Living Essentials' Director of Sales, listing the seven Wholesalers: "Hot deals at Costco Business Centers has negatively effected Paramount wholesalers that cater to jobbers and independent retailers[,] *the same group that Costco Business Center and Sams sell to*." 3-ER-565 (emphasis added).

- Living Essentials' National Account Manager drew a picture for his boss to "explain the flow of product from wholesalers and Costco to retailers":



3-ER-549–50. *See Falls City*, 460 U.S. at 436.

- Living Essentials' second expert agreed that "some of [the] plaintiffs' customers bought 5-Hour Energy from Costco Business Center when the promotions were being run." 3-ER-478.

- All three retailers who testified stated that they alternatively buy 5-hour Energy from Wholesalers or Costco, depending on the price. 2-ER-254–63; 2-ER-299–309; 3-ER-378–82.

10

- Various wholesalers testified that they literally saw their retail store customers buying 5-Hour Energy from a Costco Business Center during a promotion, or had customers show them receipts reflecting the same. 2-ER-279; 2-ER-288–89; 3-ER-357.

Living Essentials disregards these observations, evidently under the belief that competition can be shown exclusively by expert opinion. Petition 6-7, 11 (describing its expert's testimony as "uncontested proof"). It cites no authority for that proposition, and there is none. Nor does it explain why it is logical to suspect that a witness to whom one side pays $975/hour is more reliable than multiple fact witnesses (from both sides) who have had long careers in the industry. The jury sided with Living Essentials because it was erroneously instructed, not because it rejected this mountain of evidence of competition.

### D. The District Court Used an Inarguably Wrong Rule to Evaluate Competition.

Living Essentials and Judge Miller suggest that the majority should have deferred to the district court's non-competition finding, which followed from its "'independent review of the evidence.'" Petition 7; Op. 41. But although it is not mentioned in either opinion, the district court applied neither the *Volvo* test nor the *Falls City/Tri-Valley* test. Instead, (copying Living Essentials' proposed findings word-for-word) the district court based its 'independent review' upon the legal rule that "[a] proper analysis of the existence of competition involves a systematic

study of sales and pricing—a determination of consumer price sensitivity and demand substitution." 1-ER-8 ¶323, 2-ER-64 ¶323. As support for that proposition, it copied Living Essentials' citations to *Volvo* and *Hasbrouck v. Texaco*, 842 F.2d 1034 (9th Cir. 1987). *Id.* But neither says anything of the sort, and tellingly, on appeal Living Essentials abandons the test that it prescribed to the district court. Because the district court applied a heretofore unknown legal standard for competition, it is not a matter of "clear error" as Judge Miller suggests, Op. 41, but abuse of discretion, just as the majority concluded. Op. 29-30; *see* Dkt. 43 (Reply 26).

### E. The Non-RPA Cases Living Essentials Cites Are Irrelevant.

Living Essentials cites two Sherman Act cases, a Clayton Act Section 7 case, and the DOJ's "Horizontal Merger Guidelines" to argue that competition under the RPA should turn on proof of purchasers' "price sensitivity." Petition 14. But the question in Sherman Act and Section 7 cases is completely different. All analyses under those claims begin from the premise that competition *exists* between one product (or business) and the other; the analysis determines whether competition in the market is robust (so that a merger can go forward) or minimal (which can be evidence of cartelization or monopoly power). But no court has ever suggested that a "competition" finding under the RPA turns on the *strength* of

12

the competition, nor does such a suggestion find any support in either *Volvo* or

*Falls City* (or any other RPA case for that matter).

## II. THE ARGUMENT THAT A DISFAVORED PURCHASER MUST PROVE "ANTITRUST INJURY" TO OBTAIN AN INJUNCTION IS SQUARELY BARRED BY THE CLAYTON ACT AND SUPREME COURT PRECEDENT.

The Petition's second argument is that Wholesalers are required to prove

"antitrust injury" to obtain injunctive relief under 2(d). This argument is

foreclosed for three reasons: (1) The Supreme Court holds that there is no "injury"

requirement in section 2(d), (2) the Clayton Act requires only "threatened" injury

for an injunction, and (3) in all events, Wholesalers' threatened antitrust injury is

easily shown.

As the majority opinion correctly recites, *Simplicity Pattern* squarely holds

that under section 2(d) a plaintiff need not show "that the illicit practice has had an

injurious or destructive effect on competition." 360 U.S. at 65. The Court

recognized that under 2(a) a plaintiff need only show that a price discrimination

"may" harm competition, and that even that minimal threshold is not present in the

text of sections 2(c), (d), or (e). *Id.* at 64-65. Accordingly, the Court reasoned,

"the proscriptions of these three subsections are absolute," and "[w]e cannot

supply what Congress has studiously omitted." *Id.* at 65, 67. Where the Supreme

Court itself cannot insert a competitive harm requirement into 2(d), Living

Essentials' argument that this Court should do so is a dead letter. Nor—for the

reasons mentioned—could this Court conclude that *Simplicity Pattern* has been implicitly overruled by some other case.

Second, Living Essentials correctly recognizes that the source of injunctive relief for a 2(d) violation is section 16 of the Clayton Act.  Petition 16.  But that section does not require an "antitrust injury" as Living Essentials claims; it requires only a "*threatened loss* or damage by a violation of the antitrust laws."  15 U.S.C. § 26 (emphasis added).  Accordingly, the Petition's assertion that "private plaintiffs can sue only if they suffer antitrust injury," Petition 15, is just wrong.[1]

As for the third point, Wholesalers easily show a threatened antitrust injury. Antitrust defendants routinely toss out the phrase "antitrust injury" like a talismanic shield for their conduct, but in most cases the concept is quite simple. As the seminal case explained, the phrase means only "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Here, the undisputed evidence shows that Living Essentials

---

[1] The Petition cites *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, for the proposition that 2(d) "'does require [a plaintiff] to establish antitrust injury.'" Petition 18 (quoting 799 F.3d 202, 215 (2d Cir. 2015)).  While unclear, that court must have been addressing a plaintiff's ability to recover *damages* under section 4 of the Clayton Act, not an injunction under section 16, which requires only a "threatened loss or damage."  15 U.S.C. § 26.

showered Costco with $6.7 million in promotional payments, 3-ER-573–81, while extending just $161,918 to the seven Wholesalers *combined*.  2-ER-84.  Costco sold roughly four times more 5-hour Energy than Wholesalers, meaning that on a proportional basis, Costco received $10:$1 in promotional payments.

Wholesalers' "threatened loss," 15 U.S.C. § 26, is thus the continuing deprivation of *hundreds of thousands of dollars* in promotional payments that Wholesalers will not receive unless Living Essentials is enjoined to comply with section 2(d).  In the framework of "antitrust injury" under *Brunswick*, it is beyond simple to see that depriving these family-owned businesses of those promotional payments is *precisely* the type of injury that section 2(d) was "intended to prevent," and that that deprivation "flows from" the violation.  429 U.S. at 489.

The Petition also tosses out another catchphrase favored by antitrust defendants, "harm to competition."  Petition 11, 15, 17.  While it does not spell it out, presumably Living Essentials means to suggest that Wholesalers must show not only a threatened loss to themselves, but a threat to competition *generally*.  The problem with that argument is that it is again contrary to both Supreme Court and Circuit authority.  In the seminal RPA case of *FTC v. Morton Salt*, the Court quoted the Act's legislative history, explaining that the *reason* the RPA had been enacted in the first place was that Congress viewed the predecessor anti-discrimination provision of the Clayton Act as having "'been too restrictive, in

15

requiring a showing of general injury to competitive conditions.'" 334 U.S. 37, 49 (1948). The Court explained that the "new provision [*i.e.*, the RPA] was intended to justify a finding of injury to competition by a showing of 'injury to the competitor victimized by the discrimination.'" *Id.* As the RPA Congress reasoned: "Only through such injuries, in fact, can the larger general injury result." S. Rep. No. 1502, 74th Cong., at 4 (1936).

This Court has unsurprisingly followed suit, agreeing with the proposition that "injury to competition in a secondary-line Robinson-Patman case is conclusively established by proof of injury to a competitor." *Chroma Lighting v. GTE Products Corp.*, 111 F.3d 653, 655 (9th Cir. 1997).

Evidently arguing that Wholesalers must show something beyond proof of threatened injury to themselves, Living Essentials twice observes that the Supreme Court has indicated that the RPA should be construed consistently with other antitrust laws. Petition 5, 17. That much is true, but the very RPA case from which that proposition originates prefaced the principle with the restriction: "except where Congress has told us not to." *Automatic Canteen Co. v. FTC*, 346 U.S. 61, 74 (1953). That limitation has not been overruled, and as *Morton Salt* explained, Congress *has* told courts not to require an RPA plaintiff to prove a general injury to competition. 334 U.S. at 49. And the Supreme Court continues to recognize that "[t]his Court is not free to substitute its preferred economic

16

policies for those chosen by the people's representatives." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).

### III. LIVING ESSENTIALS' SECONDARY ARGUMENTS ARE LIKEWISE MISLAID.

In its *Statement of the Case* and at different points in its two main arguments, Living Essentials tosses out a handful of secondary arguments to suggest error in the majority opinion. None has merit.

For example, Living Essentials claims that the majority "misreads the record," in finding that there is "'no evidence that Costco sold 5-hour Energy to consumers.'" Petition 9 (quoting Op. 30). But close attention to the footnote it provides in support shows that it offers nothing but its *lawyers*' assertion that Costco sold 5-hour Energy "to end users." *Id.* n.8.

Second, Living Essentials suggests that Wholesalers should not be entitled to an injunction "without any demonstrable proof that consumers will benefit." Petition 11. But the entire premise of the Robinson-Patman Act is Congress's belief that consumers will benefit by equal treatment of independent stores and chains. *See FTC v. Sun Oil Co.*, 371 U.S. 505, 520 (1963). No court has ever suggested that an RPA plaintiff bears an additional burden of proving "consumer benefit" in order to obtain the fair treatment that Congress mandated.

Finally, Living Essentials joins Judge Miller in arguing that "operational differences between Costco and Wholesalers," weigh against a finding of

17

competition in sales of 5-hour Energy. Petition 13. But there is no authority supporting that proposition, and the majority opinion is entirely correct in refuting the proposition by a string-cite of cases showing that operational differences are irrelevant. Op. 31-32. Were it otherwise, suppliers' sales to Walmart would be largely immune to RPA challenges, due to undeniable "operational differences" between it and every independent competitor in the country.

## CONCLUSION

The majority opinion correctly applied Circuit and Supreme Court precedent on the 2(d) issue, so neither panel rehearing nor rehearing *en banc* is appropriate on the basis of either of Living Essentials' two arguments.

Respectfully submitted,

s/ *Mark Poe*
Mark Poe
Randolph Gaw
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 766-7451

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number(s)** _____21-55397_____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App. P.

32(a)(4)-(6) and **contains the following number of words:** 3,956**.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** __s/ *Mark Poe*_____ **Date** _August 25, 2023_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*